IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JEVANNE GARVEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 6:26-cv-3109-MDH |
| | ) | |
| KRISTI NOEM, *et. al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained by the Department of Homeland Security ("DHS") and parole has been terminated without prior written notice. Pending is his Verified Petition for Writ of Habeas Corpus in which he argues federal statutes and the Due Process Clause require that he be released or granted a hearing. The Court agrees with Petitioner's Constitutional arguments, and on that basis, it concludes the Petition for Writ of Habeas Corpus should be **GRANTED**.

## BACKGROUND

Petitioner has been present in the United States since 2015, first as a visitor, then as a lawful permanent resident. Petitioner has been a lawful permanent resident since July 27, 2024, based on his marriage to a United States Citizen. (Doc. 1-2). Petitioner has been in custody since August 13, 2025. He is the father of a newborn child whom he has never met.

In April 2022 he was charged with trafficking cocaine in Arlington, Virginia. Those charges were outright dismissed. Moreover, the charges and the dismissal were disclosed on his application for lawful permanent residence status in 2024. (Doc. 1-9).

1

Petitioner's first victory in Immigration Court was on August 26, 2025, when proceedings were terminated by the Immigration Court. (Doc. 1-3). ICE, however, did not release him from custody and continued to detain him even though proceedings had been terminated and Petitioner remained a lawful permanent resident. Ten days later, the Department of Homeland Security ("DHS") filed a Motion to Reconsider with the Immigration Court so they could present new witnesses. The Immigration Court granted reconsideration and reopened proceedings. (Doc. 1-4). Thereafter, the Immigration Court again sided with Petitioner on November 28, 2025. (Doc. 1-5). DHS then appealed the decision to the BIA. (Doc. 1-6). In January 2026, Petitioner sought release on bond while the appeal was pending. The Immigration Judge granted the bond on January 26, 2026. (Doc. 1-7). Triggering the 90-day automatic stay provisions, DHS then appealed the decision on bond to the BIA, where it remains pending. (Doc. 1-8).

For nearly 200 days, Petitioner has remained in custody despite being a lawful permanent resident in valid status. Respondents filed a notice of intent to appeal the bond on January 27, 2026, with a simple form. The EOIR-43 indicates, in relevant part, "Filing this form on 1/27/2026 automatically stays the Immigration Judge's custody re-determination decision. See 8 C.F.R. §1003.19(i)(2)." The automatic stay occurs without the ability of the Petitioner to contest it in any way. Petitioner is currently being held in Ozark County Jail without bond.

Petitioner brought this proceeding, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241, against (1) the acting field office director of ICE Kansas City, (2) the Secretary of DHS, and (3), the Ozark County Sheriff all in their official capacities.[1] He asserts his detention violates

---

[1] Petitioner's Petition lists Cass Martin as a party by virtue of his administration of the Ozark County Jail. The Court construes the proper party holding Petitioner in custody as the Department of Homeland Security through Immigration and Customs Enforcement. As DHS and ICE are utilizing the Ozark County Jail to hold Petitioner and other detainees, the Court expects its ruling to apply to the Government and those aiding the Government regarding this specific case.

the Immigration Nationality Act (INA), and the Due Process Clause. Respondents argue that Petitioner is not entitled to be considered for release, and the Court resolves the parties' arguments below.

## DISCUSSION

### I. Jurisdiction

Respondents argue that 8 U.S.C. §1252(a)(2)(B)(ii) deprives this Court of jurisdiction to consider Petitioner's claims. The Court disagrees.

Section 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B). Petitioner's claims are not challenges to "discretionary" immigration decisions—they are constitutional challenges to prolonged detention without any individualized determination of dangerousness or flight risk. Agencies have no "discretion" to violate the Constitution or binding statutes. A decision that deprives an LPR of liberty in violation of due process is not a "discretionary judgment" protected from review—it is an unlawful act subject to judicial correction. Petitioner is not challenging a discretionary immigration decision, so the above provision does not deprive the Court of jurisdiction. This Court concludes it has jurisdiction over Petitioner's habeas petition.

### II. The Due Process Clause

Petitioner alleges his continued detention violates the Due Process Clause of the Fifth Amendment. Respondents argue that because the automatic stay has a 90-day ceiling, it is constitutional.

3

Petitioner has no criminal convictions. The sole arrest in his history resulted in charges dismissed nearly four years ago. The Immigration Judge heard witnesses and reviewed evidence—including witness testimony—over a full contested evidentiary hearing and found twice that the Government had failed to meet its burden. That same judge, after a dedicated bond hearing, made an individualized determination that Petitioner poses no danger and no flight risk and that a bond of $10,000 was sufficient to protect Petitioner's liberty interest while preserving the government's concerns. The immigration judge found no basis for continued detention. The Government has litigated twice and lost.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Sanchez v. LaRose* at *7 (citing *Zadvydas v. Davis*, 533 U.S. at 690). Although immigration detention is administrative, it is still subject to due process clause review. *Id.* (citing *Hernandez v. Sessions*, 872 F3d at 981 ("the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process.")). When the government grants an alien parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment. *Id.* (citing *Alegria Palma v. LaRose*, 25-cv-1942, ECF No.14 (S.D. Cal. Aug. 11, 2025) (finding that "continued freedom after release on own recognizance" was a core liberty interest)).

Substantive Due Process

The substantive due process framework requires that any deprivation of liberty bear a reasonable relationship to a legitimate governmental purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The Government's interest in seeking a third opportunity to prove what it could not prove twice is not a constitutionally sufficient justification for nearly 200 days of incarceration of

4

a lawful permanent resident who has never been convicted of anything. Petitioner's continued detention violates substantive due process.

Procedural Due Process

Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "A procedural due process claim has two elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Sanchez v. LaRose*, 2025 U.S. Dist. LEXIS 190593, *6-7 (citing *Miranda v. City of Casa Grande*, 15 F4th 1219, 1225 (9th Cir. 2021) (internal quotations and citation omitted)).

Here, Petitioner was deprived of his liberty interest in his lawful permanent resident status when Respondents invoked the 90-day automatic stay after an immigration judge, after a dedicated bond hearing, made an individualized determination that Petitioner poses no danger and no flight risk and that a bond of $10,000 was sufficient to protect Petitioner's liberty interest while preserving the government's concerns. The Court disagrees with Respondents' analysis of the *Mathews* factors as applied to this case. Under *Mathews*,

> identification of the specific dictates of due process generally requires consideration of three distinct factors: *First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335, 96 S.Ct. 893 (emphasis added).

*Mathews* Factors

Undoubtedly, the private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004). Petitioner has been held in a county jail—in conditions indistinguishable from criminal incarceration— since August 13, 2025. He is separated from his United States citizen wife. He has never held his newborn United States citizen child, who was born on November 21, 2025. He cannot maintain employment. He cannot participate in family life. He cannot be present for the foundational weeks and months of his daughter's life. Every day that passes under this unlawful detention is a day that cannot be recovered. *See Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (first Mathews factor strongly satisfied where petitioner was "locked up in jail" and "could not maintain employment or see his family or friends or others outside normal visiting hours").

The risk of erroneous deprivation of Petitioner's liberty is high where procedural principles do not include any standards for the agency official to satisfy and operates as an appeal of right. *See Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1188 (D. Minn. 2025) (second Mathews favor strongly satisfied where petitioner had succeeded twice in immigration court and Respondents invoked automatic-stay regulation with appeal of a bond order). The automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), is triggered by the filing of a single form—EOIR-43—with no requirement that DHS demonstrate that the Immigration Judge's bond determination was erroneous. Petitioner cannot oppose it. There is no hearing. There is no judicial review of the stay decision itself. There is no opportunity for Petitioner to contest it in any forum before he is deprived of the liberty the Immigration Judge granted. The Court agrees with the *Gunaydin* court that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id*. (quoting *Nken v. Holder*, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009)).

Traditionally, to be granted a stay on a court order, the party seeking the stay must make a strong showing that they are likely to ultimately prevail; in making this showing, "[i]t is not enough that the chance of success on the merits be better than negligible." *Id*. No such requirement is included in the automatic stay regulation at issue in this case. The regulation does not provide Petitioner any opportunity to be heard before, during, or after the stay is invoked. A blatant absence of procedural due process. This turns these well-established procedural principles on their heads and carries a significant risk of erroneous deprivation. *Id* at 1189.

The final factor directs the Court to weigh the private interests at stake and the risk of erroneous deprivation of those interests against Respondents' interests in persisting with the regulation, including the fiscal and administrative burdens of an additional or substitute procedural requirement. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893. Here, the Government's interest in continued detention under the automatic stay regulation is weak. Twice an immigration judge has found no basis for continued detention. The Government does not identify a single risk that the Immigration Judge failed to consider or a single fact that has changed since the bond hearing. The automatic stay is not being used to prevent genuine irreparable harm to the Government—it is being used to ensure that a noncitizen who won remains in custody until DHS gets a third chance to make its case.

In sum, the *Mathews* factors weigh in favor of Petitioner, and the court finds that his continued detention violates his Due Process rights.

### III. <u>Temporary Restraining Order</u>

Petitioner asks the Court to grant any other and further relief that this Court deems just and proper. The Court below orders release and will not issue a TRO specifically for those matters.

7

However, under similar circumstances, this Court has granted temporary injunctive relief to habeas petitioners to enjoin Respondents from relocating petitioners outside the jurisdiction of this Court. The Courts finds that such relief is just and proper in this case.

In analyzing a request for a TRO, the Court weighs: 1) probability movant will succeed on the merits; 2) threat of irreparable harm to the movant absent injunction; 3) balance between threatened harm to the movant and harm the injunction would inflict on other interested parties; and 4) the public interest. *Dataphase Sys., Inc. v. C L Syst., Inc.*, 640 F.2d 109, 114 (8th Cir.1981) (en banc). "No single factor is dispositive;" rather, the court must consider all factors to determine whether on balance they weigh towards granting the remedy. *Calvin Klein Cosmetics Corp. v. Lenox Labs.*, Inc., 815 F.2d 500, 503 (8th Cir. 1987).

The Court finds that a TRO in this case is appropriate. As discussed above, the Court has already found that movant will succeed on his Petition for Habeas Corpus by virtue of his Due Process argument that has been fully briefed by both parties. Further, the threat of irreparable harm to the movant absent injunction is high as every day Petitioner sits deprived of his previously granted liberty interest is a day he doesn't get back. As to the balance between the threatened harm to the movant and the harm the injunction would inflict on other interested parties, the balance tips in favor of Petitioner. Respondents and other interested parties would not suffer by allowing Petitioner to have a bond hearing or await further immigration proceedings at home. Lastly, there is a public interest in allowing those who are detained pursuant to 8 U.S.C. § 1226 to enjoy the discretionary detention intended and determined by Congress. For these reasons, the Court finds a TRO is appropriate.

### IV. <u>Attorneys' Fees</u>

Petitioner requests an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Pursuant to the EAJA, a court shall award to a prevailing party fees and other expenses incurred by that party in any civil action, brought by or against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C § 2412(d)(1)(A). To be eligible for fees under the EAJA, a petitioner must submit an application within thirty days of final judgment, and the petitioner's net worth must be less than two million dollars at the time the civil action was filed. *See id.* §§ (d)(1)(B), (d)(2)(B)(i). The EAJA was enacted with the purpose of removing the financial disincentive for individuals challenging or defending against government action and encouraging challenges to improper government action as a means of helping formulate better public policy. *See, e.g., Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163 (1990) ("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." (citation omitted)); *Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) ("The EAJA was passed partly to *encourage* challenges to improper actions by government agencies. The drafters perceived legal actions as helping to formulate public policy." (citations omitted)).

As explained throughout, the Court finds the position of the United States is not substantially justified. The manner in which the provisions have historically been interpreted, legislative intent, statutory construction, and the plain text of the statutes all support that the United States is not substantially justified in its novel interpretation of immigration laws. Thus, Petitioner may pursue an award of reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act.

## CONCLUSION

The Court concludes Petitioner has been deprived of his Due Process rights. Accordingly, the Petition for Writ of Habeas Corpus is **GRANTED** as follows.

1. Respondents are **ORDERED** to immediately release Petitioner from custody.

2. Respondents shall make accommodations available for Petitioner until such time as arrangements can be made for Petitioner to be returned to the location of arrest or other location agreed by the parties.

3. Petitioner shall promptly report to the Court any failure to comply with this Order by Respondent.

4. Petitioner may submit an application for fees under the EAJA within thirty days of the entry of final judgment.

5. It is **FURTHER ORDERED** that Respondents are enjoined from relocating Petitioner outside the jurisdiction of this Court prior to compliance with this Order.

**IT IS SO ORDERED**.

DATED: March 4, 2026

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**